**FLINTKOTE COMPANY, Appellant**

v.

**Jack B. TIZER and William Tizer, Trading under the Names of Royal Carpet & Linoleum Company, Royal Tire Company, Royal Paint Stores, Cut-Rate Tile Company and Royal Venetian Blind Co., Appellees.**

**No. 12719.**

United States Court of Appeals Third Circuit.

Argued Jan. 20, 1959.

Decided May 5, 1959.

**850**

Robert F. Conrad, Washington, D. C. (Watson, Cole, Grindle & Watson, Wash-ington, D. C., M. Carton Dittmann, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Edward J. Willey, New York City, on the brief), for appellant.

Samuel Kagle, Philadelphia, Pa., for appellees.

Before GOODRICH and HASTIE, Circuit Judges and EGAN, District Judge.

HASTIE, Circuit Judge.

This claim for trademark infringement and unfair competition was submitted to the trial court for decision on depositions and other documentary evidence. The court incorporated its findings and conclusions in an opinion pursuant to which a final decree was entered denying the plaintiff, Flintkote Co., relief. This appeal followed.

For some thirty years Flintkote, or a predecessor in title, has been the owner of registered trademark "Tile-Tex", used on asphalt tile products, and "Flexa-chrome", used as a trademark for its more expensive vinyl plastic asphalt tile. In recent years appellees, who trade under the name Royal Tile Co., among others, and will be called "Royal", have been marketing asphalt tile products under the trademark "Tile-Tone" and vinyl plastic asphalt tile under the trademark "Flextone". "Tile-Tone" was registered in 1955 and "Flextone" in 1956.

We consider first the question of trademark infringement. Of course not only similarities and dissimilarities of the marks themselves, but also the circumstances under which they are used, are relevant. Proctor & Gamble Co. v. J. L. Prescott Co., 3 Cir., 1939, 102 F.2d 773. Where the mark identifies an article sold in commerce, decision is likely to depend upon the question whether ordinary purchasers have been or are likely to be misled into believing that the alleged infringer's product is the complainant's. Restatement, Torts, § 717, comment *b*. Of course the wrong is clearest where there has actually been a trading on another's good will, palming off goods from a different source as his product. In this case the only evidence offered to

suggest a palming off, or even any customer confusion, was the testimony of a professional shopper employed by the plaintiff as a member of a team sent out to determine whether there had been palming off of Royal products as plaintiff's. The procedure of the shoppers thus employed was to ask at Royal's retail stores for plaintiff's products, either "Tile-Tex" or "Flexachrome". According to the testimony here, it was their usual experience that the Royal salesman would direct the shopper to a display plainly marked "Tile-Tone" or "Flextone". This would be done with some such comment as "here we are", or "I would like to show you what we have". In one case the salesman made the observation, "this is what you want". When the shopper purchased the tendered goods he received a receipt properly identifying the purchase as "Tile-Tone" or "Flextone". The shopper also testified that on one occasion he asked whether the displayed "Tile-Tone" article was "made by the same company that makes "Tile-Tex" to which the salesman made the equivocal reply "we have a number of names". The conclusion of the cross-examination of this sole witness on the issues of confusion and palming off was as follows:

"Q. * * * would you say that the procedure we have just gone through applies substantially to all the visits?

"A. The procedure was in each case as I have already testified. The salesman would either direct our attention to the display or would lead us toward it.

"Q. Well, in all cases you knew, then, that you were looking at Tile-Tone or Flextone?

"A. Oh, certainly, sir.

"Q. And you selected the tile that you bought with that knowledge, with your eyes wide open, and knowing what you bought?

"A. Absolutely."

The District Court concluded that plaintiff's testimony established no more than the effort of salesmen who did not have the article requested by customers, to sell something else thought suitable for the buyer's needs in circumstances where it should have been and was in fact reasonably clear that an article different than the one requested was being tendered. We think this was a permissible evaluation of the evidence, particularly since there was no testimony that bona fide customers not connected with either party had ever been confused. Indeed, additional evidence concerning the marketing of the parties' products minimized the risk of confusion.

■ There was undisputed testimony that Flintkote products were relatively high priced merchandise sold almost exclusively to industry and contractors, while the Royal products were relatively inexpensive tile sold over the counter in defendants' retail outlets to householders for "do-it-yourself" jobs. Indeed, the court found as a fact that the two products were not sold in competition with each other. This, of course, made customer confusion very unlikely and emphasized the artificiality and the abnormality of the situation created by plaintiff in sending professional shoppers into defendants' retail stores to ask for "Tile-Tex" and "Flexachrome". In these circumstances the trial court was justified in treating the professional shoppers' experience as of little probative value on the issues of confusion and palming off and in concluding that the plaintiff had failed to carry its burden of proof on these issues.

What has already been said leaves no basis for the claim of trademark violation except any similarities of the marks themselves and the goods they identify. The court below concluded that such similarities as existed were not sufficient in themselves as to create any substantial or unreasonable risk of confusion.

In considering this conclusion we note an additional finding that Royal did not copy or attempt to imitate plaintiff's marks in designing and adopting its own. On the record this was a permissible conclusion. It leaves us with no more

**852**

than happenstances; the common adoption of two coined words, both beginning with the descriptive word "tile", as trademarks for asbestos tile and a similar coining of two words, each beginning with the descriptive word "flex", to designate somewhat similar flexible flooring tiles.

■■ In comparing "Flextone" and "Flexachrome", used for similar but non competitive plastic tile products, the court below properly pointed out that the common prefix "flex" is descriptive and not subject to exclusive appropriation for trademark purposes. Cf. Eastern Wine Corp. v. Winslow-Warren, Ltd., 2 Cir., 1943, 137 F.2d 955, certiorari denied 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452. The completing syllables "tone" and "achrome" are dissimilar in appearance and are made only slightly similar in sound by the presence of a common long "o". We agree that on their face these two, when combined with "flex", are not so confusingly alike as to require a conclusion that the one infringes the other. Cf. Miles Laboratories, Inc. v. Foley & Co., 1944, 144 F.2d 888, 32 CC PA 714.

■ By parity of reasoning we agree that "Tile-Tone" is not on its face infringed by "Tile-Tex", both used for similar but non competitive asphalt tile products. Here "tile" is a descriptive common prefix not subject to appropriation, while "tex" and "tone" are monosyllables with a common initial consonant but otherwise notably dissimilar.

■■ We think no separate discussion of the claim of unfair competition is necessary. Palming off and customer confusion are the essence of an unfair competition claim. Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 1911, 220 U.S. 446, 461, 31 S.Ct. 456, 55 L.Ed. 536; Rosenberg Bros. & Co. v. Elliott, 3 Cir., 1925, 7 F.2d 962. These essentials have not been established here.

The judgment will be affirmed.