**AMERICAN CYANAMID CORPORA-TION, Plaintiff-Appellee,**

v.

**CONNAUGHT LABORATORIES, INC., Defendant-Appellant.**

**No. 1581, Docket 86–7447.**

United States Court of Appeals, Second Circuit.

Argued July 16, 1986.

Decided Sept. 5, 1986.

Cynthia Clarke Dale, Washington, D.C., (Sughrue, Mion, Zinn, MacPeak & Seas, Washington, D.C., Ludwig Saskor, Smith, Steibel, Alexander & Saskor, New York City, of counsel), for defendant-appellant.

Marie V. Driscoll, New York City (Townley & Updike, New York City, Stanley J. Silverberg, American Cyanamid Co., Wayne, N.J., of counsel), for plaintiff-appellee.

Before WINTER and MAHONEY, Circuit Judges, and CABRANES, District Judge.*

* The Honorable José A. Cabranes, United States District Judge for the District of Connecticut, sitting by designation.

WINTER, Circuit Judge:

Connaught Laboratories, Inc. ("Connaught") appeals from Judge Owen's preliminary injunction enjoining the use of the trademark HibVAX for Connaught's Haemophilus influenzae type b vaccine and requiring the recall of any of the HibVAX vaccine already shipped. The district judge found that American Cyanamid Corporation, the manufacturer of an identical vaccine bearing the trademark HIB–IMUNE, was likely to prevail on the merits of its trademark infringement claim against Connaught. We believe there is no infringement as a matter of law. Because plaintiff's other claims are also without merit, we reverse and order the complaint dismissed.

## BACKGROUND

The parties to this action manufacture chemically identical vaccines that immunize children against Haemophilus influenzae type b diseases. One generic term for such diseases is "Hib"; the other is "H–FLU." The vaccine manufactured by American Cyanamid's Lederle Laboratories Division ("Lederle") is sold under the registered trademark "HIB–IMUNE"; the vaccine manufactured by the defendant Connaught is sold under the name "HibVAX." The Lederle vaccine went on the market in December 1985, the Connaught vaccine in April 1986. The only other manufacturer of a Hib vaccine is Praxis Biologics, Inc., whose product went on sale in April 1985 and has dominated the market since.

The vaccines in question are not sold to the public either by prescription or over the counter; instead, they are sold only to physicians or to pharmacies, wholesalers, and hospitals that resell to physicians. These vaccines are administered to patients only by licensed medical personnel at doctors' offices, clinics, and other medical facilities.

Both vaccines are packaged in pairs of small bottles. One bottle contains the active ingredient; the other contains a diluent that is mixed with the active ingredient to reconstitute the vaccine before it is administered to the patient. A package of Hib-VAX contains five doses of active ingredient in one bottle and somewhat more than five doses of diluent in the other bottle; a package of HIB–IMUNE has five bottles containing one dose of active ingredient and five bottles containing slightly more than one dose of diluent.

The proper dosage of either HibVAX or HIB–IMUNE is 0.5 milliliters of the reconstituted vaccine. This dose is clearly stated on the outside of the packages, on the individual bottles, and in package inserts. The instructions for mixing and administering the vaccines are also specifically set forth in the package inserts.

The full generic name of the Hib vaccine, "Haemophilus polysaccharide vaccine," appears on the front of each package of HIB–IMUNE and HibVAX in larger type than the trademark. The generic name of the vaccine also appears on each bottle label in type as prominent as the trademark. In addition, the name of the manufacturer, either Lederle or Connaught, appears on each package and bottle of their respective vaccines.

The colors used on HIB–IMUNE packages and labels are yellow, blue, and white. Lederle uses the same color scheme for most of its other pharmaceutical products. In contrast, the colors used on HibVAX packages and labels are peach and white. The caps on bottles of HIB–IMUNE are blue and yellow, while the caps on bottles of HibVAX are silver.

Lederle commenced this action on May 5, 1986, alleging trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and unfair competition, dilution, and deceptive trade practices under New York law. On May 28, 1986, Judge Owen granted Lederle's application for a preliminary injunction against the use of the trademark HibVAX, which he found to be "potentially confusing[ly] similar" to the trademark HIB–IMUNE. Memorandum Opinion at 6. He subsequently ordered Connaught to initiate a recall of all products bearing the trademark HibVAX. The injunction and order have been stayed

pending our disposition of this expedited appeal.

## DISCUSSION

We believe that Connaught's mark for its vaccine does not infringe the Lederle trademark. Moreover, given the lack of deceptive intent or conduct by Connaught in marketing its product, the dissimilar trade dress of the two vaccines, and the market in which they are sold, there is no chance of confusion between the two products. Neither plaintiff's federal trademark action nor its state claims have any merit, therefore, and must be dismissed.

A trademark holder cannot appropriate generic or descriptive terms for its exclusive use, and a trademark infringement finding thus cannot be based on the use of a generic or descriptive term such as "Hib." *See, e.g., Flintkote Co. v. Tizer,* 266 F.2d 849, 852 (3d Cir.1959); *Upjohn Co. v. Schwartz,* 246 F.2d 254, 262 (2d Cir.1957); *Eastern Wine Corp. v. Winslow-Warren, Ltd.,* 137 F.2d 955, 959 (2d Cir.), *cert. denied,* 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452 (1943). Trademark protection benefits consumers by enabling them to select products on the basis of their origin. This encourages sellers to create and maintain good will by marketing products of reliable quality that consumers associate with their mark. Consumers will not benefit, however, if trademark law prevents competitors from using generic or descriptive terms to inform the public of the nature of their product. Were the first user of a generic or descriptive term, say "bicycle," able to exclude later entrants from use of that term, the former would be able not only to identify itself as the maker of the bicycle and to capitalize on whatever good will it has built up—legitimate purposes of trademark protection—but also to impair the ability of competitors to describe their product as bicycles—a wholly counterproductive result so far as consumers are concerned. *See, e.g., Bada Co. v. Montgomery Ward & Co.,* 426 F.2d 8, 11 (9th Cir.) ("word which is in its primary meaning merely descriptive of the goods to which it is applied may not be appropriated as the exclusive trademark of a single seller, since one competitor will not be permitted to impoverish the language of commerce by preventing his fellows from fairly describing their own goods"), *cert. denied,* 400 U.S. 916, 91 S.Ct. 174, 27 L.Ed.2d 155 (1970). Accordingly, marks that become generic are no longer valid trademarks. *See, e.g., King-Seeley Thermos Co. v. Aladdin Industries, Inc.,* 321 F.2d 577 (2d Cir.1963) (thermos bottle); *Dupont Cellophane Co. v. Waxed Products Co.,* 85 F.2d 75 (2d Cir.1936) (cellophane), *cert. denied,* 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed.2d 1539 (1938).

This principle applies equally to a generic component of a trademark. Although such a component will not necessarily render the entire mark invalid, its presence does affect the analysis of whether a competitor's mark containing the same component is likely to create confusion. As a result, because the generic term "Hib" may not be appropriated by Lederle for its exclusive use, any likelihood of confusion between HibVAX and HIB–IMUNE, and any consequent finding of infringement, must be based on a similarity between the suffixes "VAX" and "IMUNE." The very statement of the issue, however, resolves it. The suffixes are totally different. They are of different length, sound, and appearance. They share not even a letter in common.

Lederle makes much of the fact that the Connaught's suffix "VAX" and its own suffix "IMUNE" are close in intended meaning and concept, and argues therefore that the former infringes the latter. We disagree. Even if the intended meaning and concept are similar, they are wholly descriptive. Lederle's trademark protection extends only to words or abbreviations similar to its own and thus likely to confuse consumers. A description of a product's use does not in itself create confusion. Lederle thus cannot preempt its competitors from using every word or abbreviation, no matter how dissimilar in sound and appearance, that might refer to immuniza-

tion or vaccination or that might remind consumers, here medical professionals, of those medical procedures. Because there is no similarity between the two marks that might generate confusion between the products, we need not weigh the various factors set out in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

Lederle relies heavily upon *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103 (2d Cir.1978). In that case, we held that the trademark "ROACH MOTEL," used on a box that trapped insects, was infringed by the brand name "ROACH INN," used on a similar device. However, we explicitly stated:

> We do not find the mark ROACH MOTEL to be a merely descriptive mark. While roaches may live in some motels against the will of the owners, motels are surely not built for roaches to live in. Hence the mark is fanciful in conception. Indeed, its very incongruity is what catches one's attention.

> We think, therefore, that ROACH MOTEL is at least a suggestive mark, rather than a descriptive mark—if, indeed, it is not altogether an arbitrary mark.

> . . . .

> ... It appears to us most likely that an ordinary consumer having read or heard on television the words "ROACH MOTEL" would remember the conception rather than the precise word. He would be unlikely to differentiate between "Motel" and "Inn" in his recollection. We think it more likely that he would recall simply a fanciful abode for roaches in an establishment normally frequented by human travellers.

*Id.* at 106–07 (citations and footnotes omitted).

In contrast, both "VAX" and "IMUNE" are straightforward, descriptive abbreviations of the medical use to which the product is put. They lack fanciful concept or ironic meaning. They may well have a similar meaning, but that meaning lies entirely in their descriptive reference to vaccination and immunization. The suffixes are arbitrary only in the particular abbreviation they use, and each company may thus be protected against similar marks such as "HibVACS" or "HIB–IMMUN" respectively. However, absent a deceptive use designed to create confusion over the origin of the two products, Lederle cannot prevent Connaught from using the "HibVAX" mark.

No such deceptive use is present in this case. Notwithstanding his contrary views on the likelihood of confusion, Judge Owen noted that Connaught had announced the HibVAX mark as early as 1983, and therefore held that Connaught's conduct was not willful infringement. Moreover, all three letters of the prefix "Hib" are capitalized in the trademark HIB–IMUNE, while only the first letter of the prefix is capitalized in HibVAX. Furthermore, HIB–IMUNE is hyphenated, while HibVAX is not. These differences in the appearance of the prefix "Hib" serve to minimize any possibility of confusion. The suffixes "IMUNE" and "VAX," moreover, are, as noted *supra*, totally different in sound and appearance. The vaccines' trade dress is also quite dissimilar. The packages and labels of HIB–IMUNE are yellow, blue, and white, whereas the packages and labels of HibVAX are peach, silver, and white. The names "Lederle" and "Connaught" are prominently displayed on the packages and labels as well as on the advertisements for the vaccines.

We thus perceive neither an infringement of protectible trademark interests nor any danger of confusion between the two products. Decisions such as *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566 (2d Cir.1971), and *Morgenstern Chemical Co. v. G.D. Searle & Co.*, 253 F.2d 390 (3d Cir.), *cert. denied*, 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958), direct exacting judicial scrutiny where there is a possibility of confusion over marks on medicinal products and a resultant danger of physical harm. Those cases are, however, inapposite.

We are of course sensitive to the fact that the potential consequences of confusion over medicinal products may be far more dire than of confusion over ordinary consumer products. We perceive no realistic possibility of such harm in the present case. Lederle offers the strained argument that, because the dosages in the bottles of the different product differ, harm might result if a patient were inoculated with the contents of a five-dose bottle of HibVAX active ingredient combined with the contents of a one-dose bottle of HIB–IMUNE diluent. Such a mix-up could occur, however, only through the spectacular incompetence of the physician or nurse who administered the injection. Even a marginally incompetent medical professional would not combine the contents of two bottles bearing different colored labels and different brand names solely because one bottle carried the trademark HibVAX and the other the trademark HIB–IMUNE. Furthermore, because the common generic name of the vaccine is at least as prominent as the trademark on packages and bottles of HibVAX and HIB–IMUNE, the potential danger from use by an incompetent professional would be undiminished even if Connaught were prevented from using the HibVAX mark. Finally, as the district judge observed, there is nothing in the record to suggest that a patient would suffer any significant adverse reaction even if such a mistake was made.

Plaintiff's federal and state law claims are thus utterly without merit. We have previously held that, while as a general rule we "will go no further into the merits than is necessary to decide the interlocutory appeal," *Hurwitz v. Directors Guild of America, Inc.*, 364 F.2d 67, 70 (2d Cir. 1966), "this rule is subject to a general exception—the appellate court may dismiss the complaint on the merits if its examination of the record upon an interlocutory appeal reveals that the case is entirely void of merit." *Id.* (citing *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 495, 20 S.Ct. 708, 712, 44 L.Ed. 856 (1900); *Sheldon v. Moredall Realty Corp.*, 95 F.2d 48 (2d Cir. 1938)); *see also Triumph Hosiery Mills,*

*Inc. v. Triumph International Corp.*, 308 F.2d 196, 200 (2d Cir.1962) (ordering dismissal of trademark infringement action that was before court on appeal of grant of preliminary injunction).

We therefore reverse and order dismissal of the complaint.