**BANFF, LTD., f/k/a Sweater Bee by Banff, Ltd., Plaintiff,**

v.

**FEDERATED DEPARTMENT STORES, INC., and Bloomingdale's, a division of Federated Department Stores, Inc., Defendants.**

No. 86 Civ. 3635 (RWS).

United States District Court, S.D. New York.

March 31, 1987.

---

Dennis Grossman, New York City, for plaintiff; Eileen King, of counsel.

Kuhn, Muller and Bazerman, New York City, for defendants; Steven H. Bazerman, Frank D. Decolvenaere, of counsel.

SWEET, District Judge.

On May 7, 1986, plaintiff Banff, Ltd. ("Banff") filed this action under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), to enjoin defendant Bloomingdale's, a division of Federated Department Stores, Inc. ("Bloomingdale's"), from using a false designation of origin on women's wearing apparel. By opinion dated June 5, 1986 (reported at 638 F.Supp. 652), this court granted Banff's request for a preliminary injunction against Bloomingdale's use of the mark "B Wear," in the typestyle then being used by Bloomingdale's, on the grounds that it infringed on Banff's prior use of the trademark "Bee Wear." Banff now seeks a permanent injunction enjoining the defendants from infringing Banff's "Bee Wear" mark and from using any trademark likely to cause confusion with its "Bee Wear" mark, including Bloomingdale's new trademarks "B Wear" and "b Wear," and seeks dismissal of the defendants' counterclaims. For the reasons stated below, the request for a permanent injunction is granted in part and denied in part, and the counterclaims are dismissed.

In order to eliminate the delay of extended discovery and trial, the parties have stipulated to waive oral testimony and to submit as evidence the verified complaint, the declarations and exhibits filed on the preliminary injunction motion, and any admissions in the pleadings, correspondence, and memoranda. The only materials before the court that were not presented in connection with the motion for a preliminary injunction are plaintiff's and defendants' memoranda of law in connection with the request for a permanent injunction.

Because this court's June 5, 1986 opinion stated factual findings based on the same evidence that is now before the court, this opinion will incorporate those findings and address only those factual and legal aspects of the case that require a different result.

■ In deciding whether to enter a permanent injunction, the court must determine whether the plaintiff has succeeded on the merits of its claim and whether a balancing of the equities involved favors the grant of injunctive relief. *Metro Kane Imports, Ltd. v. Rowoco, Inc.*, 618 F.Supp. 273, 275 (S.D.N.Y.1985); *Sierra Club v. Alexander*, 484 F.Supp. 455, 471 (N.D.N.Y. 1980), *aff'd without opinion*, 633 F.2d 206 (2d Cir.1980). This court has already concluded that Banff has demonstrated likelihood of success on the merits and that the equities favor the grant of injunctive relief to Banff, which is particularly vulnerable to the threat of irreparable harm. *See* 638 F.Supp. at 658. Defendants argue that the court erred on several factual and legal matters in its June 5, 1986 opinion.

**The Connaught Decision**

■ The first question raised by the memoranda of law is whether the Second Circuit's recent opinion in *American Cyanamid Corp. v. Connaught Laboratories, Inc.*, 800 F.2d 306 (2d Cir.1986) requires re-examination of the conclusion that the Banff and Bloomingdale's marks are confusingly similar. In *Connaught*, the marks in issue were plaintiff's HIB–IMUNE and defendant's HibVAX trademarks for identical vaccines that immunize against Haemophilus influenza type b diseases. One generic term for such diseases is "Hib." 800 F.2d at 307. The Second Circuit held that:

A trademark holder cannot appropriate generic or descriptive terms for its exclusive use, and a trademark infringement finding thus cannot be based on the use of a generic or descriptive term such as "Hib" ... As a result ... any likelihood of confusion between HibVAX and HIB–IMUNE, and any consequent finding of infringement, must be based on a similar-

ity between the suffixes "VAX" and "IMUNE."

*Id.* The Second Circuit reversed the issuance of a preliminary injunction, finding that the suffixes are of different length, sound, and appearance. Even if the suffixes were close in intended meaning and concept, the court found that they were wholly descriptive.

Even if *Connaught* were seen as a directive to compare only the "Bee" and "B" of "Bee Wear" and "B Wear." "Bee" and "B" are both one syllable, identical in oral speech, and, when viewed separately rather than side by side, present the same overall impression. *See Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.*, 680 F.2d 891, 893 (2d Cir.1982); *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103, 107 (2d Cir.1978). Many customers, when recalling that they have seen the "Bee Wear" label, may easily forget the exact spelling of the word, remembering the pronunciation instead.

Although defendants urge the court to interpret *Connaugth* as restricting comparison of the two marks to "Bee" and "B," the non-generic terms of the trademarks, for purposes of determining both similarity and priority, such an approach is contrary to logic and the prevailing authorities. *Connaught* did not purport to change the long-standing doctrine that the non-generic components of a mark must be compared, but in the context of the overall composite mark. 2 McCarthy, Trademarks and Unfair Competition § 23.15(G), p. 89 (2d ed. 1984). It merely stated the rule that a finding of infringement cannot rest on the use of the same generic term alone, when the other terms are totally dissimilar.

Furthermore, to conclude that "Bee" and "B" alone should be compared for purposes of determining priority would dictate the result. Because Bloomingdale's has used the letter "B" as a symbol of Bloomingdale's for several decades, it could combine "B" in any typestyle with any generic term and claim priority over similar marks. Therefore, for purposes of evaluating both similarity of marks and claims of priority, the "overall impression," *Paco Rabanne*,

*supra,* 680 F.2d at 893, of the entire mark must be examined.

### Good Faith

In its June 5, 1986 opinion, this court concluded that the factor of good faith did not weigh unequivocally in favor of either party. *See* 638 F.Supp. at 657. Nevertheless, the opinion did state that:

> One factor which slightly tips the balance in Banff's favor is the inference which may be drawn from the typescript of the label which resembles Banff's mark more than it does any of Bloomingdale's previous advertisements of its own initial in conjunction with private label goods.

*Id.* Defendants argue that, contrary to the court's finding, Bloomingdale's has used this style of "B" as a symbol for Bloomingdale's before. As defendants point out, the "B" used on the Bloomingdale's label is a standard serif type style that has been used in advertisements dating from April, 1984 for Bloomingdale's "B–Line" private label women's hosiery. It is not a case where defendants have recently adopted a distinctive type style used exclusively by another party. Nevertheless, Bloomingdale's has used the "B" over the years in two predominant and distinctive styles— the "ribbon B" and the more recent lower case "b." The choice of a more commonplace "B" when these two distinctive styles were available, in conjunction with Bloomingdale's knowledge of the "Bee Wear" mark, confirms this court's earlier conclusion that Bloomingdale's was not acting in complete good faith.

### Jurisdiction over the Third Counterclaim

■ The defendants' third counterclaim in its amended answer seeks a declaratory judgment that Banff may not use the "B Wear" mark or the defendants' "B" or "b" in Banff's "Bee Wear" mark. Banff argues that this is not a case or controversy within the meaning of Article III of the Constitution, since Banff neither uses nor used nor intends to use a "B Wear" or "b Wear" mark or the distinctive Bloomingdale's "B" or "b" in Banff's "Bee Wear" mark.

According to the parties, Banff asserted in settlement discussions its right to use "B Wear" and the Bloomingdale's "B" and "b." Nevertheless, the assertion of a right to use a particular mark, without more, does not give rise to a justiciable controversy. Banff has not stated that it intends to use the marks in question. Without actual use or the immediate intention to use the marks, there is no justiciable controversy. *See Wembley, Inc. v. Superba Cravats, Inc.,* 315 F.2d 87, 89–90 (2d Cir.1963).[1] The third counterclaim is therefore dismissed, without prejudice to reopen should defendants learn of a definite intent on the part of Banff to take immediate action to use the marks at issue.

### Scope of the Injunction

In its June 5, 1986 opinion, the court excluded the lower case "b" commonly seen in Bloomingdale's advertising from the scope of the preliminary injunction. The parties have not presented any new evidence or arguments which convince the court to change its initial determination of the injunction's scope.

■ At that time, however, this court addressed only the use of the lower case "b", because Bloomingdale's proposed only that it would introduce a new "b Wear" label using that print style. Bloomingdale's now proposes that, for purposes of the permanent injunction, the court exclude both the lower case "b" and the "ribbon B." Both typestyles are distinctive and widely used by Bloomingdale's. Therefore, for the reasons discussed in the June 5 opinion, the permanent injunction against the use of a "B Wear" label will not be extended to a label using a "b" or "ribbon B" in the typescripts featured in other Bloomingdale's advertising.

For the foregoing reasons; the permanent injunction is granted in part and de-

---

1. Bloomingdale's asserts that Banff has admitted the existence of an actual controversy by failing to deny the jurisdictional allegations in the third counterclaim. Whether or not Banff has made such an admission, this court cannot exercise jurisdiction when it finds that the controversy is nonjusticiable.

nied in part, the first and second counterclaims are dismissed with prejudice, and the third counterclaim is dismissed without prejudice. Banff's request for attorneys' fees is denied, since, even assuming that Section 35 of the Lanham Act, 15 U.S.C. § 1117, applies to a Section 43(a) action, this is not an "exceptional case" in which the court may award reasonable attorneys' fees. 15 U.S.C. § 1117. The parties are directed to submit a proposed judgment on notice within ten (10) days.

IT IS SO ORDERED.