IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————

No. 98-51200

————————————


SMALL BUSINESS ASSISTANCE CORPORATION,

                         Plaintiff-Counter Defendant-
                         Appellee-Cross-Appellant,

                    v.

CLEAR CHANNEL BROADCASTING, INC.;
BILL STRUCK; JIM PAUL,

                         Defendants-Counter Claimants-
                         Appellants-Cross-Appellees,

JOHN CANDELARIA,

                         Defendant-Appellant-Cross-Appellee.


————————————————————————

Appeal from the United States District Court
for the Western District of Texas, San Antonio
————————————————————
April 12, 2000

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit
Judges.

BENAVIDES, Circuit Judge:

    Appellants-cross-appellees Clear Channel Broadcasting, Inc.,

Bill Struck, Jim Paul, and John Candelaria (collectively "Clear

Channel") appeal from a jury verdict in favor of appellee-cross-

appellant Small Business Assistance Corp. ("SBAC") on its claims

of trademark infringement under that Lanham Act and tortious

interference with prospective economic advantage.  Upon

consideration of the parties' briefs and argument on appeal, as

well as a review of the record, we reverse the judgment with

respect to both claims and render judgment on both claims in favor of Clear Channel.

Clear Channel contends, and we agree, that the infringement claim must fail because the allegedly infringing mark, "Summer Jam," was generic. The testimony and record evidence lead to the inescapable conclusion that "Summer Jam" is a generic term for a musical concert occurring during the summer months. Therefore, "Summer Jam" cannot infringe SBAC's mark, "Uncle Sam Jam." A trademark cannot be infringed by the generic term for the product it designates. See American Cyanamid Corp. v. Connaught Lab., Inc., 800 F.2d 306, 307 (2d Cir. 1986) ("A trademark holder cannot appropriate generic . . . terms for its exclusive use, and a trademark infringement finding thus cannot be based on the use of a generic . . . term[.]"); Dranoff-Perlstein Assocs. v. Sklar, 967 F.2d 852, 861 (3d Cir. 1992) (same). This is true even if consumers are confused by a competitor's use of a generic term. See Society of Fin. Exam'rs v. National Ass'n of Certified Fraud Exam'rs, Inc., 41 F.3d 223, 225 (5th Cir. 1995) ("Even total confusion, however, is irrelevant if 'CFE' constitutes a 'generic' mark."). Accordingly, the lower court's determination that "Summer Jam" was not generic is unsupported by the record and must be reversed.

Because we conclude that SBAC's Lanham Act claim fails, we need not address the issues of abandonment, fraudulent registration, additional attorney's fees, or prejudgment interest on the trademark infringement recovery amount. However, we must

2

vacate both the $78,000 award for trademark infringement and the $27,650 award of attorneys' fees under the Lanham Act.

With respect to the claim for tortious interference with prospective economic advantage, we reverse the award of all damages as to all defendants in the case. We agree with Clear Channel that no evidence supports the damages element of a tortious interference claim.[1] At best, SBAC's proof on this issue was speculative. SBAC simply was unable to demonstrate that any of the egregious behaviors[2] alleged to be tortious caused any economic damage with respect to the 1996 Uncle Sam Freedom Festival.[3] Though SBAC suffered $23,000 in losses on the

---

[1] Though this issue is not properly before us, as neither party has raised it, we have reservations that tortious interference with prospective economic advantage exists, as such, under Texas law. The closest analogue appears to be tortious interference with prospective business relations. The elements of that tort require: (1) a reasonable probability or expectation of entering into a contractual relationship; (2) intentional and malicious conduct by the defendant that prevents consummation of the contract; (3) no justification or privilege shields the defendant; and (4) actual harm or damages caused by defendant's conduct. See AT&T Corp. v. Southwestern Bell Tel. Co., 2000 WL 14711 (Tex. App.–Dallas), at *3 (unpublished).

[2] Specifically, SBAC alleged that John Candelaria, a disc jockey at Power 102, a hip hop station owned by Clear Channel, called Def Jam records and threatened to blackball all Def Jam artists if Montel Jordan, SBAC's headliner, played at the 1996 Uncle Sam Freedom Festival. Moreover, SBAC averred that John Candelaria announced on the air that Montel Jordan would not be performing, and that SBAC had canceled the 1996 Uncle Sam Freedom Festival because of rain. Finally, SBAC presented evidence that Clear Channel parked its own van outside the 1996 Uncle Sam Freedom Festival grounds and distributed free t-shirts and other paraphernalia bearing the Power 102 logo.

[3] SBAC conceded at oral argument that it presented no evidence that any artist refused to perform at the 1996 Uncle Sam Freedom Festival because of John Candelaria's alleged threats, that it

3

1996 Uncle Sam Freedom Festival, the record does not support

attributing that loss to Clear Channel's actions.[4]  We therefore

reverse the tortious interference damages award in the amount of

$1,045,800 against Clear Channel, the $199,700 award against John

Candelaria, the $274,700 award against Bill Struck, and the

$25,900 award against Jim Paul.

---

failed to produce evidence of even a single person who forwent
attendance at the 1996 Uncle Sam Freedom Festival because he
thought it had been canceled, and that it likewise proffered no
evidence that the Power 102 van outside the Uncle Sam Freedom
Festival grounds deterred even a single patron from entering the
concert.

[4]  SBAC relies on the testimony of its expert which projected
the supposed losses suffered by SBAC over 5, 15, and 30 years.
Though SBAC repeatedly characterized this testimony as being
based on "objective evidence," the expert testimony in fact
provides no basis of an award for damages without engaging in,
not merely speculation, but unfounded speculation.  Quite simply,
with the 1996 Uncle Sam Freedom Festival, SBAC launched a new
concert format, featuring a new kind of music and sponsored by a
new radio station, and it had absolutely no baseline from which
to measure its profits.  "Profits which are largely speculative,
as from . . . promotion of untested products or entry into
unknown or unviable markets . . . cannot be recovered." Texas
Instruments, Inc. v. Teletron Energy Management, Inc., 877 S.W.2d
276, 279 (Tex. 1994); see also Harper Bldg. Sys., Inc. v. Upjohn
Co., 564 S.W.2d 123, 126 (Tex. App.–Beaumont 1978, no writ) ("In
the cases denying recovery where the business is new or
unestablished, the reasons for such denial are that before the
establishment of the business profits could not have been made
and could not be used in reasonably anticipating profits to be
made in the future[.]").
    Even were we not to consider the 1996 Uncle Sam Freedom
Festival to be a start-up venture, SBAC's evidence of lost
profits would still be too speculative to support recovery.
Since SBAC lost $23,000 on its 1996 concert, none of which losses
was attributable to Clear Channel's conduct–all of which was
committed prior to and related to the 1996 Uncle Sam Freedom
Festival–the projection of lost profits for the years after 1996
constitutes speculative evidence, not just as to SBAC's projected
profits, but also that such losses of profits were attributable
to Clear Channel's behavior.

Because of our reversal of the tortious interference claim, we need not address the issues of the punitive damages cap, the prejudgment interest for the tortious interference award, and the personal liability of Bill Struck, Jim Paul, and John Candelaria.

We conclude that the judgment of the lower court must be reversed, and we dismiss all claims against Clear Channel.

REVERSED and RENDERED.