

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2007

# Everett Lab Inc v. Vertical Pharm Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1661

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Everett Lab Inc v. Vertical Pharm Inc" (2007). *2007 Decisions*. Paper 949.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/949

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1661

_____

EVERETT LABORATORIES, INC.,

Appellant

v.

VERTICAL PHARMACEUTICALS, INC.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No.05-cv-05926)
District Judge: Honorable Dickinson R. Debevoise

_____

Argued on May 10, 2007

Before: RENDELL, JORDAN, and ALDISERT,* Circuit Judges.

(Filed: June 13, 2007 )

_____

  * Honorable Ruggero J. Aldisert, Senior Judge of the United States Court of Appeals
    for the Third Circuit, participated via audioconference.

Kevin W. Goering   **[ARGUED]**
Sheppard, Mullin, Richter & Hampton
30 Rockefeller Center, 24th Floor
New York, NY   10112

Don J. Pelto
Julie A. Hopkins
Sheppard, Mullin, Richter & Hampton
1300 "I" Street, NW, 11th Floor
Washington, DC   20005
*Counsel for Appellant*
*Everett Laboratories, Inc.*


Charles P. Kennedy   **[ARGUED]**
Roy H. Wepner
Samantha M. Kameros
Lerner, David, Littenberg,
   Krumholz & Mentlik
600 South Avenue West, 3rd Floor
Westfield, NJ   07090-1497
*Counsel for Appellee*
*Vertical Pharmaceuticals, Inc..*

_____

OPINION OF THE COURT
_____


RENDELL, <u>Circuit Judge</u>.

Everett Laboratories ("Everett") appeals from the January 13, 2006 order of the

United States District Court for the District of New Jersey denying Everett an injunction

against Appellee Vertical Pharmaceuticals ("Vertical") for using the mark "CORVITE" as a name for Vertical's prescription vitamin product. Everett argued that Vertical's use of that name infringed on Everett's "STROVITE" mark, which Everett also applies to a prescription vitamin product, in violation of §§ 32 and 43(a) of the Lanham Act. The District Court determined that Everett was unlikely to succeed on the merits after finding that relevant consumers were not likely to be confused by the two names. We will affirm the order of the District Court.

## I.      Factual and Procedural Background

The facts of this case are not in significant dispute.[1]

Since 1985, Everett has manufactured, marketed and sold prescription vitamin supplements. Although most vitamins are sold over the counter, Everett competes in what it characterizes as the "narrow market segment of prescription vitamin supplements." Appellant's Brief at 6. Since its inception, Everett has sold the prescription vitamin STROVITE and, over the years, has added "STROVITE PLUS," "STROVITE FORTE," and "STROVITE ADVANCE" to its line of products. Everett claims to have spent over $2 million marketing and advertising these products. On May 1, 2001, the United States Patent & Trademark Office ("USPTO") granted Everett a

---

[1]Because discovery had not yet taken place, the District Court resolved this case solely on the basis of the affidavits and declarations submitted by the parties. Our recitation of the facts is necessarily derived from these untested submissions, though we emphasize again that the parties largely do not disagree on the essential facts.

trademark registration for the mark "STROVITE." Everett apparently has not sought separate registration for the full names of its other STROVITE products.

In 2003, three Everett employees left the company to found Vertical.[2] Over the spring and summer of 2003, Vertical developed and began to market and sell its own prescription vitamin supplement – CORVITE. In deciding upon the name "CORVITE," Vertical claims that it combined the words "core" – as in "core nutrients," signifying the medical necessity of the ingredients – with "vite" – a suffix Vertical claims represents the word "vitamin." Vertical has not yet registered "CORVITE" with the USPTO, though it has taken some steps to do so.

Both STROVITE and CORVITE are sold in the same fashion and to the same people: sales representatives personally visit doctors' offices and leave literature or sample boxes behind to encourage doctors to prescribe the product in the future. Wholesalers will purchase the vitamins and distribute them to pharmacies in anticipation of future prescriptions.

Everett became aware of CORVITE on August 8, 2005 and, shortly thereafter, notified Vertical of its belief that CORVITE's name infringed on Everett's "STROVITE" mark. On August 25, 2005, Everett claims that it began receiving reports of confusion amongst doctors and pharmacists as to the existence of a relationship between CORVITE

---

[2]This was not an amicable parting, as evidenced both by this suit and a separate one currently pending between Everett and Vertical in New Jersey state court. Both parties agree that the issues in the state court case do not bear on those presented here.

4

and Everett. In response, and in anticipation of this litigation, Everett gathered affidavits from those who either claimed to have witnessed confusion (five Everett sales reps) or experienced such confusion personally (five New Jersey pharmacists).

On December 23, 2005, Everett filed suit against Vertical in the United States District Court for the District of New Jersey alleging trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trade dress infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under the common law of New Jersey; tortious interference with existing contractual relationships under the common law of New Jersey; tortious interference with prospective contractual relationships under the common law of New Jersey; and unfair competition under N.J.S.A. § 56:4-1. Shortly thereafter, Everett sought and obtained from the District Court an order to show cause as to why a preliminary injunction – preventing Vertical from "selling, manufacturing, marketing, advertising or distributing any vitamin, mineral or nutritional supplement product bearing the CORVITE mark or any mark or brand name confusingly similar to Everett's STROVITE mark" – should not be issued.[3]

---

[3]Everett's suit not only alleged that CORVITE infringed on its "STROVITE" mark but also that Vertical's use of the mark "OB COMPLETE" for its prenatal vitamin product infringed on the trademark for Everett's own prenatal vitamin, "VITAFOL OB." However, Everett did not seek a preliminary injunction as to Vertical's use of OB COMPLETE. Additionally, Everett's motion for a preliminary injunction was not premised on any arguments pertaining to its § 43(a) trade dress or state law claims. Therefore, the District Court's ruling was only as to Everett's likelihood of succeeding on

On January 13, 2006, the District Court heard argument on the motion and, the same day, denied it via an oral opinion. In doing so, the District Court did not proceed past the first prong of the familiar four-prong test for a preliminary injunction: likelihood of success on the merits. The Court recognized that, to prevail on its Lanham Act claims, Everett had to "demonstrate that (1) it had a valid and legally protectable mark; (2) [that] it owns that mark; and (3) [that Vertical's] use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.* (*A & H V*), 237 F.3d 198, 210 (3d Cir. 2000) (brackets added). Because there was no dispute as to the first two of these elements, the District Court confined its analysis to the question of whether consumers were likely to be confused by the marks "STROVITE" and "CORVITE," determining that the issue was governed by what is now known as the ten "*Lapp* Factors," in reference to our decision in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983). After examining these factors, which are set forth below, the Court concluded that there was no likelihood of confusing "STROVITE" with "CORVITE" and, therefore, that Everett was unlikely to succeed on the merits.

Everett now appeals, arguing that the District Court made numerous errors of law in applying the *Lapp* Factors and that, therefore, it abused its discretion in denying Everett's motion for a preliminary injunction. Everett asks that we either vacate the

---

its § 32 and § 43(a) trademark and unfair competition claims as to the use of "STROVITE" and "CORVITE."

District Court's order and remand with instructions consistent with Everett's view of the law or, better yet, that we enter a preliminary injunction ourselves. We choose neither option because we conclude that the District Court did not abuse its discretion in denying Everett's motion.

## II.     Jurisdiction and Standard of Review

We have jurisdiction to review this interlocutory appeal under 28 U.S.C. § 1292(a)(1). "We review the District Court's factual determinations for clear error, but we give plenary review to its legal conclusions." *A & H V*, 237 F.3d at 210. "We review the denial of a preliminary injunction for an 'abuse of discretion, an error of law, or a clear mistake in the consideration of proof.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Converse Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). As mentioned above, the crucial question before the District Court was whether Everett has shown a likelihood that consumers would confuse the two marks. In reviewing the District Court's analysis, we are mindful that "[l]ikelihood of confusion is a factual question . . . but legal principles govern what evidence may, or must, be considered by the District Court in reaching that conclusion, and also what standards apply to its determination." *A & H V*, 237 F.3d at 210.

### III.     Applicable Law

To obtain a preliminary injunction, Everett had the burden of showing "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the non-moving party; and (4) that the public interest favors such relief." *Kos*, 369 F.3d at 708 (citations and quotations omitted).

With respect to the first element, neither party disputes the law governing the merits of this case: Everett had the burden before the District Court of showing that "STROVITE" is a "valid and legally protectable mark," that Everett owns the mark and that Vertical's use of the mark causes a "likelihood of confusion" in the marketplace. Both parties continue to agree that Everett has satisfied the first two of these elements. The question, therefore, is whether the District Court erred in finding that Everett had failed to show a likelihood of confusion between the two marks.

A "likelihood of confusion" exists when "'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *A & H V*, 237 F.3d at 211 (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992)). The question is not whether a court could imagine that any consumer might possibly be confused by the defendant's mark but, rather, whether "an *appreciable number of ordinarily prudent consumers* of the type of product in question are likely to be confused

8

as to the source of the goods."[4] *Versa Prod. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 200 (3d Cir. 1995) (emphasis added).

In *Lapp*, we identified ten factors to which a court may look to resolve such questions. Although these factors were initially designed for cases involving non-competing goods, in *A & H V* we adapted them for use in competing-goods cases, such as this one. *See A & H V*, 237 F.3d at 212-213. These factors are:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;
(2) the strength of the owner's mark;
(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase (i.e., "consumer sophistication");
(4) the length of time the defendant has used the mark without evidence of actual confusion arising;
(5) the intent of the defendant in adopting the mark;
(6) the evidence of actual confusion;
(7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
(8) the extent to which the targets of the parties' sales efforts are the same;

---

[4]In *Kos*, the Court questioned whether the appropriate standard for cases involving drugs, such as *Kos* itself, was "possibility of confusion" rather than "likelihood of confusion." *Kos*, 369 F.3d at 716 n.13. Although *Kos* never resolved the question, both of the parties in that case agreed that "likelihood of confusion" was the proper standard. *Id*. However, in an earlier iteration of *A & H*, the Court identified the lack of clarity over the standard and held, definitively, that "the appropriate standard for determining trademark infringement under the Lanham Act is likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc. (A & H IV)*, 166 F.3d 197, 205 (3d Cir. 1999). Although *A & H IV* did not involve drugs, there is no question that the Court's intent was to put to rest a long-running, and much criticized, ambiguity in our prior law. *See* 3 J. McCarthy, *Trademarks and Unfair Competition*, § 23:3. Regardless, neither Everett nor Vertical suggest now that the standard is anything other than "likelihood of confusion."

9

(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; and

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect the prior owner is likely to expand into the defendant's market.

*See Kos*, 369 F.3d at 709 (citing *A & H V*, 237 F.3d at 215).

Although we have encouraged the use of these factors, a district court need not engage in a precise accounting of each and every one. "None of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced one against the other." *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001). Although, this "'is not to say that all factors must be given equal weight.'" *Kos*, 369 F.3d at 709 (quoting *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 476 n.11 (3d Cir. 1994)). Instead, "'different factors may properly be accorded different weights depending on the particular factual setting. A district court should utilize the factors that seem appropriate to a given situation.'" *Kos*, 369 F.3d at 709 (quoting *A & H V*, 237 F.3d at 215). Importantly, however, "a district court may, if it so chooses, examine only mark similarity for directly competing goods." *A & H V*, 237 F.3d at 214. Indeed, the "single most important factor in determining likelihood of confusion is mark similarity." *Id*. at 216.

**IV.    Discussion**

Everett argues that the District Court erred in its analysis by, *inter alia*, failing to consider and appropriately weigh all ten *Lapp* factors.  Overall, we think that the District Court, while it may have focused on certain aspects more than others,[5] did not abuse its discretion in finding a lack of confusion.  We so conclude based not only on the District Court's reasoning and result, but also because we think the District Court overstated the similarity of the marks – the "single most important factor."

In analyzing the first *Lapp* factor, the District Court said:

> They each have obvious similarity of a 'vite' at the end of the [sic]. Name, combined with the vite, which the parties seem to agree relates to vitamins, is the arbitrary one syllable prefix C-O-R in one case, and S-T-R-O in the other.  The combination creates an arbitrary arc and name, even though the defendant attributes the word core, C-O-R-E, as the source of the C-O-R in Corvite.  Thus, there are similarities.  The use of the vite, and an arbitrary one syllable prefix which has some element of similarity, C-O-R/S-T-R-O, bearing some superficial relationship, as evidenced by my previous mispronunciation of Corvite as Crovite.

Appx. at 18.

However, when determining mark similarity, "the general rule that marks should be viewed in their entirety does not undermine the common-sense precept that the more forceful and distinctive aspects of a mark should be given more weight, and the other

_____

[5]The District Court may have overemphasized misdispensing as compared to source confusion and concentrated too much on consumer sophistication.  *See, e.g.*, *Kos*, 369 F.3d at 718 ("There is no reason to believe that medical expertise as to products will obviate confusion as to source or affiliation or other factors affecting good will.").

aspects less weight." *A & H V*, 237 F.3d at 216. *See also Country Floors, Inc. v. P'ship Composed of Gepner and Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991) (quoting *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983) ("When comparing two marks each must be viewed in its entirety, although 'one feature of a mark may be more significant than other features, and it is proper to give greater force and effect to that dominant feature.'"); 3 J. McCarthy, *Trademarks and Unfair Competition*, § 23:48 (the "inclusion of a [common, descriptive] suffix may alone be an insufficient basis to find a likelihood of confusion where the initial portions of the mark are sufficiently indistinguishable").

Here, the "VITE" portion of both marks is a commonly understood descriptive term – calling to mind "vitamin" – of little independent force or distinctiveness that should have been given lesser weight than the marks' more distinctive aspects – the "COR" and "STRO" prefixes. Therefore, the District Court should have focused to a greater extent on "COR" and "STRO" when determining the marks' similarity. In our view, a comparison of these prefixes does not give rise to the conclusion that the marks are similar or likely to confuse. *See Tektronix, Inc. v. Daktronics, Inc.*, 187 U.S.P.Q. 588 (T.T.A.B. 1975), *aff'd*, 534 F.2d 915, 189 U.S.P.Q. (C.C.P.A. 1976) (finding no likelihood of confusion between "TEKTRONIX" and "DAKTRONICS" in part because the suffix "TRONIX"/"TRONICS" merely indicates that the goods are electronic in nature); *Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306 (2d Cir. 1986)

12

(finding no likelihood of confusion between "HibVAX" and "HibIMMUNE" in part because the term "Hib" signified that the respective vaccines at issue were designed to treat *h*aemophilus *i*nfluenza type *b*); *Cutter Labs., Inc. v. Air Prods. & Chems., Inc.*, 189 U.S.P.Q. 108 (T.T.A.B. 1975) (finding no likelihood of confusion between "STERIFLEX" and "RESIFLEX" in part because the suffix "FLEX" is a descriptive term indicating the flexible nature of the product); *Polaroid Corp. v. Oculens, Ltd.*, 196 U.S.P.Q. 836 (T.T.A.B. 1977) (finding no likelihood of confusion between "POLAROID" and "FILTEROID" in part because the term "OID" is a common one indicating "resemblance" or "likeness").[6] *See also* 3 J. McCarthy, *Trademarks and Unfair Competition*, § 23:48 (setting forth numerous other similar cases).

Therefore, the District Court did not err in concluding that Everett was unlikely to succeed on the merits and did not abuse its discretion in denying Everett's motion for a preliminary injunction.

## V.    Conclusion

For these reasons, we will AFFIRM the ruling of the District Court.

_____

[6]Although *Tektronix*, *Cutter Labs.*, and *Polaroid* involved Lanham Act § 2(d) claims, "the standard applied is the same 'likelihood of confusion' rule applicable to the test of trademark infringement."  3 J. McCarthy, *Trademarks and Unfair Competition*, § 23:78.

13