**GIRLS CLUBS OF AMERICA, INC., Plaintiff,**

v.

**BOYS CLUBS OF AMERICA, INC., Defendant.**

**No. 88 Civ. 1375.**

United States District Court, S.D. New York.

March 28, 1988.

**52**

Thomas V. Heyman, Dewey, Ballantine, Bushby, Palmer and Wood, New York City, for plaintiff.

Thomas Dubbs, Hall, McNichol, Hamilton and Clark, Siegrun D. Kane, Kane Dalsimer, New York City, for defendant.

## OPINION AND ORDER

CONBOY, District Judge:

The adversaries in this case are two of the most distinguished organizations in America dedicated to the welfare of the nation's youth. The controversy at hand has its genesis in a growing trend toward elimination of gender distinction in the memberships of such organizations. The defendant Boys Clubs of America ("BCA") has in recent years begun to admit girls, and is considering changing its name to Boys and Girls Clubs of America to reflect this change in its character and membership. The plaintiff Girls Clubs of America ("GCA") argues, inter alia, that such an action would infringe its trademark, and injure its position with respect to present and prospective members and patrons. Efforts to resolve the matter have been pursued in good faith by both parties, but have to this date been unavailing leading, sadly, to this litigation.

To obtain a preliminary injunction, GCA must establish: (a) irreparable harm and (b) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in GCA's favor. *Home Box Office v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1314 (2d Cir. 1987). For purposes of clarity, the Court will address first the question of likelihood of success on the merits.

*Likelihood of success on the merits.*

■ The complaint asserts claims under § 43(a) of the Lanham Act and under New York's common law of unfair competition. To obtain a preliminary injunction, plaintiff need only establish a likelihood of success on one of the claims. *Northern Penna. Legal Services, Inc. v. County of Lackawanna*, 513 F.Supp. 678, 681 (M.D.Pa. 1981).

■ Section 43(a) protects against false designations of origin and false representations or descriptions. *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 212 n. 4 (2d Cir.1985). To succeed under section 43(a), plaintiff must show that there is a likelihood of confusion as to the source or sponsorship of defendant's products or services. *Lois Sportswear, USA, Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986). Likelihood of confusion refers to confusion of any type, including confusion as to source, sponsorship, affiliation, connection or identification. *McDonald's Corp. v. McBagel's, Inc.*, 649 F.Supp. 1268, 1273 (S.D.N.Y.1986).

■ Phrases used to designate goods or services are entitled to varying degrees of trademark protection depending upon whether they are classified as 1) generic, 2) descriptive, 3) suggestive, or 4) arbitrary or fanciful. *Banff, Ltd. v. Federated Department Stores, Inc.*, 841 F.2d 486, 489 (2d Cir. Mar. 10, 1988). A generic term is one which is commonly used to describe the goods or services and is not subject to trademark protection. *Eastern Air Lines, Inc. v. New York Air Lines, Inc.*, 559 F.Supp. 1270, 1274 (S.D.N.Y.1983) A descriptive term describes a characteristic of the goods or services and is entitled to protection only if the plaintiff can prove that the term has acquired a "secondary meaning." *American Diabetes Ass'n, Inc. v. Nat'l Diabetes Ass'n*, 533 F.Supp. 16 (E.D.Pa.1981), *aff'd*, 681 F.2d 804 (3d Cir. 1982). Although defendant half-heartedly argues that GCA is a generic term, precedent indicates that GCA is a descriptive

term.[1] *Id.* at 19. Plaintiff does not argue that GCA could fit within one of the stronger categories for purposes of trademark protection—suggestive or arbitrary—so those categories are not in issue. The next question, then, is whether GCA has acquired a secondary meaning.

■■■ A trademark acquires secondary meaning when "the *primary* significance of the term in the minds of the consuming public is not the product but the producer." *Centaur Communications v. A/S/M Communications*, 830 F.2d 1217, 1221 (2d Cir.1987). Secondary meaning exists when a substantial segment of the relevant consumer group has made the requisite association between the product and the producer. *Id.* The relevant consumer group in this case consists primarily of existing or potential club members and donors. In determining whether a trade name has acquired secondary meaning, courts have looked at various factors including length and manner of use, nature and extent of advertising, the amount of funds raised, and public recognition. *Centaur, supra,* at 1222; *American Diabetes Ass'n, supra,* at 19. GCA has made a strong showing on all of these factors.

GCA has used the designation "Girls Clubs of America" for over four decades in connection with its programs, conferences, literature, advertising and fund raising activities. GCA has also been the object of extensive media attention including features in national magazines and television programs. Since 1978, GCA has received approximately fifteen million dollars in donations, grants and endowments from individuals, corporations, private foundations and the Federal Government. These factors indicate a likelihood that GCA will be able to demonstrate that its designation has achieved secondary meaning.[2]

■■■ If GCA establishes that its mark has secondary meaning, GCA must also demonstrate a likelihood of confusion. *Banff, supra,* at 489–90. To determine whether a likelihood of confusion exists, the Court must consider, inter alia, the strength of plaintiff's mark; the degree of similarity between the two marks; the proximity and quality of the products; actual confusion; the purpose of defendant in adopting its mark; the sophistication of the purchasers; and the likelihood that plaintiff will bridge the gap, that is, whether the plaintiff is likely to enter into direct competition with the goods or services bearing the allegedly infringing mark. *Id.* at 489–90. Each factor must be considered and no single factor is controlling. *Id; Charles of the Ritz Group v. Quality King Distrib.,* 832 F.2d 1317, 1321 (2d Cir.1987).

■■■ GCA's fund-raising success, promotional efforts, media coverage, and programs amply demonstrate the strength of GCA's mark. Where, as here, a defendant appropriates the entire mark or name of a plaintiff, confusion is extremely likely. *Lambda Electronics Corp. v. Lambda Technology, Inc.,* 515 F.Supp. 915, 925–26 (S.D.N.Y.1981). That defendant has added its own name to GCA does not decrease the likelihood of confusion and may even aggravate it because it might suggest that BCA and GCA have merged or that BCA's services are affiliated with or sponsored by GCA.[3] *Banff, supra,* at 492; *A.T. Cross*

---

1. BCA argues that "Girls" and "Girls Clubs" are generic terms. In doing so, BCA ignores its own assertion that "[e]ach trademark has to be considered in its entirety." The issue before the Court is whether the name "Girls Clubs of America" is generic, not whether each word in the name, looked at in isolation, is entitled to trademark protection. *Cf. American Diabetes, supra,* at 19.

2. BCA contends that GCA should have introduced the results of a survey to prove that secondary meaning exists and that injunctive relief should be denied because of GCA's failure to do so. This assertion is based on a distorted reading of *Mattel, Inc. v. Azrak–Hamway Intern., Inc.,* 724 F.2d 357 (2d Cir.1983), which merely said that surveys had become a common way of establishing secondary meaning *where secondary meaning is otherwise not obvious.* The plaintiff in that case took no survey *and provided little other evidence of secondary meaning.*

3. BCA argues that the use of its distinct logo design in the proposed name supports a finding of no likely confusion. According to BCA, the logo "is an important symbol identifying BCA and its local clubs as a cohesive movement, not to be confused with other organizations serving boys and girls." The presence of that logo in

*Co. v. Jonathan Bradley Pens, Inc.,* 470 F.2d 689, 692 (2d Cir.1972).

Although Boys and Girls Clubs are co-educational and Girls Clubs are exclusively for girls, the proposed name-change would mislead contributors and girls regarding the nature of the services offered by a club affiliated with "Boys and Girls Clubs of America." As the Court stated in *McDonald's Corp. v. McBagel's, Inc.,* 649 F.Supp. 1268, 1276 (S.D.N.Y.), "[t]he fact that these services are not precisely the same is immaterial. Indeed it is because defendant's services may be somewhat different, and possibly (but not necessarily) inferior to those offered by plaintiff, that protection from likely confusion is available." For the same reasons, the question of whether GCA is likely to "bridge the gap" is not particularly relevant. Although GCA has no current plans to offer a co-educational club environment for girls, GCA's principal argument is that the proposed name-change will suggest, incorrectly, that the two organizations are offering the same services. In effect, BCA's name-change would place the parties in direct competition.

 The lack of evidence of actual confusion is not very probative because BCA has not yet changed its name. Moreover, such evidence is not necessary to demonstrate a likelihood of confusion. *See Inc. Pub. Corp. v. Manhattan Magazine, Inc.,* 616 F.Supp. 370, 386 (S.D.N.Y.1985), *aff'd,* 788 F.2d 3 (2d Cir.1986). Along the same lines, BCA contends that GCA's mark is weakened by the existence of third-party users against whom GCA has taken no action. There are, however, no other organizations called "Girls Clubs of America"

nor are there organizations that incorporate the entire mark in their names.

Both organizations have excellent reputations for assisting underprivileged children and the Court is reluctant to place much emphasis on the comparative quality of the two. The court also finds that the good faith and buyer (that is, member and patron) sophistication factors do not weigh unequivocally in favor of either party. The Court finds, however, that GCA is likely to succeed on the merits on the strength of the other factors. *Cf. Banff, supra,* at 492–93.[4]

*Irreparable harm.*

 In a trademark case, a showing of a likelihood of confusion establishes the risk of irreparable harm. *Home Box Office v. Showtime,* 832 F.2d 1311, 1314 (2d Cir.1987). The loss of potential donations may also constitute irreparable harm because damages from loss of donations are very difficult to prove. *American Diabetes Ass'n, supra,* at 21.

Contrary to BCA's assertion, there has been no delay on GCA's part sufficient to suggest a reduced need for a preliminary injunction. Immediately upon learning of BCA's intention to change its name, GCA expressed its objection to BCA and initiated several meetings with BCA officials in an attempt to resolve the dispute without legal action. GCA should not be punished for attempting to resolve this dispute amicably. In *Citibank v. Citytrust,* 756 F.2d 273 (2d Cir.1985), the case relied on by BCA, the plaintiff did not move for a preliminary injunction until ten weeks *after* the allegedly infringing conduct began. Here, the allegedly infringing conduct will not begin until May.

the proposed name, however, does nothing to discourage the type of confusion likely to occur in this case. The incorporation of GCA's entire mark strongly suggests that GCA and BCA have merged or that their services are affiliated. At best, the logo will indicate that GCA is affiliated with *the* Boys Club of America and not some other organization. That gives little comfort to GCA.

**4.** At this stage of the litigation, the Court finds little merit in defendant's fair use argument.

The fair use defense is only available where a defendant makes a good faith non-trademark use of a term. *A.J. Canfield Co. v. Vess Beverages, Inc.,* 796 F.2d 903, 908 (7th Cir.1986). BCA bears the burden of establishing fair use, *see, Eli Lilly and Co. v. Revlon, Inc.,* 577 F.Supp. 477, 486 (S.D.N.Y.1983), and the Court is not persuaded that BCA will be able to do so at trial. BCA's own effort to register "Boys and Girls Clubs of America" seriously undermines its fair use argument.

*Balance of Hardships.*

The Court also finds that the balance of hardships tips decidedly in GCA's favor. BCA devotes almost its entire discussion about the balance of hardships to the serious injury it will incur if the "Coupons for Kids" program is enjoined. During the hearing, however, counsel for GCA made it quite clear that GCA was not seeking to enjoin the "Coupons" program. Aside from the vague, unsupported assertion that delay of its efforts to change its name would cause BCA "continuing harm as the national organization would not be able to respond to the needs and desires of its local organizations," BCA offers little credible evidence of hardship.

*Boys Clubs of America Affiliates.*

GCA has presented no basis in fact or law for enjoining BCA from encouraging its affiliates to change their names. GCA has not alleged that BCA has the power to prevent a local club from changing its name nor has GCA made any local clubs parties to this action. Conceivably, BCA's proposed amendment might have no effect on local clubs' decisions regarding their names. The first BCA member organization officially changed its name to "Boys Club and Girls Club" in 1975 and approximately 40% of BCA clubs now call themselves "Boys and Girls Club."[5] GCA establishes no connection between the proposed amendment and a rapid increase in or continuation of this trend. GCA would have BCA do what it has chosen not to do directly—take action against local clubs that are contemplating a name-change.

Even if the Court were to find some causal connection between BCA's proposed constitutional amendment and the actions of local clubs, GCA has established neither a likelihood of success on the merits nor irreparable injury with respect to local club names. In its reply memorandum, GCA chides BCA for its failure to distinguish between two separate issues, "[f]irst whether plaintiff has a right to prevent defendant from adopting plaintiff's name, *in toto;* and second whether plaintiff has a right to an order that defendant stop encouraging its local affiliates to change their names." Although it refers to unaffiliated clubs, footnote 4 of GCA's reply memorandum makes it quite clear that the use of the name "Girls Clubs of America" in BCA's name and the use of the words "Girls Club" in an affiliates name are separate legal issues. Yet GCA devotes almost its entire memorandum in support of its motion to the confusion likely to result if BCA incorporates "Girls Clubs of America" into its name.

IT IS HEREBY ORDERED that, pending the determination of this action, defendant is enjoined from changing its name to "Boys and Girls Clubs of America," and from using plaintiff's service mark or trade name in connection with the promotion, advertising, display, circulation, or distribution of any goods or services or fund-raising efforts in any manner which relates or connects or tends to relate or connect such goods, services or fund-raising in any way to plaintiff or to any goods, services or fund-raising licensed, sponsored, or approved by or connected with plaintiff. This order shall not prevent defendant from proceeding with the "Coupons for Kids" program as it currently exists.

Plaintiff's motion for an order preliminarily enjoining defendant from promoting, condoning or otherwise encouraging its affiliated clubs from changing their names to include "Girls" therein and directing de-

---

**5.** GCA presents statistics indicating that, contrary to BCA's assertion, only a small fraction of the local BCA organizations use "Girls Club" in their names. According to a footnote in their reply memo, however, their figures "represent the percent of local Boys Clubs that used 'Girls Clubs' in their name which are within 50 miles of a Girls Clubs of America affiliated organization and are not jointly affiliated with both Boys Clubs of America and Girls Clubs of America." They never explain why their statistics are so restricted. An argument could be made that there is less likelihood of confusion when a local Boys and Girls Club exists in the same area as a Girls Club. A potential donor or club member would be more likely to discover the Girls Club and, hence, realize that the Boys and Girls Club does not represent a merger of the local organizations.

fendant to prohibit its affiliates from changing their names is denied.