FRENCH TRANSIT, LTD., Plaintiff,

v.

MODERN COUPON SYSTEMS, INC., Leonard Feldman, Larry Morris Individually, and d/b/a J & L Products and d/b/a Deodorant Stones of America, Hargen Distributing, Inc. and Chitti Kang, Defendants.

No. 91 Civ. 6734 (KC).

United States District Court,
S.D. New York.

April 15, 1993.

**636**

Randy Friedberg, Hall Dickler Lawler Kent & Friedman, New York City, for plaintiff.

Eliot S. Gerber, Wyatt Gerber Burke & Badie, Nora Hirschberger, Bryan Cave, New York City, Bennett Cooper, Brown & Bain, Phoenix, AZ, for defendants.

## ORDER

CONBOY, District Judge:

Plaintiff French Transit, Ltd. ("FT") has sued, *inter alia*, Hargen Distributing, Inc. ("Hargen") for trademark infringement, trade dress infringement, unfair competition and misappropriation under New York Law, and for violation of New York General Bus.L. §§ 133, 368–d. Hargen now moves for summary judgment. For the reasons that follow, Hargen's motion is denied.

## I. Trademark Infringement

### A. Classification of the Mark

Apparently relying on the doctrine of foreign equivalents, Hargen maintains that to determine the classification of FT's mark, "LE CRYSTAL NATUREL," we must ascertain the classification of the English words "the natural crystal." We disagree.

The doctrine of foreign equivalents is inapplicable in the present case. Under the doctrine of foreign equivalents, a trademark which is not in English is first translated into English, and is then classified. *See* 1 J. Thomas McCarthy, *Trademarks and Unfair Competition*, § 11.14 at 464–66 (2d ed. 1984). However, the doctrine does not apply when a mark is a combination of foreign and English words. *See In re Johanna Farms*, 8 U.S.P.Q.2d 1408, 1413 (TTAB 1988) (combination of the French article "La" with the English "Yogurt" changed the commercial impression of the mark as a whole such that La Yogurt was perceived as a trade name rather than a product, and was therefore protectable); *In re Universal Package Corp.*, 222 U.S.P.Q. 344, 347 (TTAB 1984) (when a mark is of all foreign components translation of the entire mark by the consumer is more likely to take place than when only part of the mark is in a foreign language). In this case, the mark consists of an English word, "Crystal," and the two French words "Le" and "Naturel." Indeed, Jerry Rosenblatt, FT's president, stated that FT used both English and French in its mark "to highlight that the product was imported from France." Rosenblatt Aff. ¶ 7. Thus, under the reasoning of *Johanna* and *Universal Package Corp.*, the proper form of FT's trademark to examine in determining the trademark's classification, is "LE CRYSTAL NATUREL," and not "the natural crystal."

We note that plaintiff's mark is prima facie protected because it is registered. 15 U.S.C. 1115(a) and 15 U.S.C. 1057(b). However, Hargen can overcome this presumption with a proper evidentiary showing. *See Karmikel Corp. v. May Department Stores Co.*, 658 F.Supp. 1361, 1367 (S.D.N.Y.1987); *see also Aluminum Fabricating Co. of Pittsburgh v. Season–All Window Corp.*, 259 F.2d

314, 316 (2d Cir.1958) (party claiming that the registration is invalid has the burden of proof and in order to prevail "must put something more into the scales than the registrant").

■ Examining the evidence in the light most favorable to the plaintiff, we conclude that the plaintiff's mark is suggestive. "A suggestive mark has not been clearly defined [ ], but appears to be one that requires imagination, thought and perception to reach a conclusion as to the nature of the goods, [ ] or one which only 'indirectly' describes the goods or services at issue." *Karmikel,* 658 F.Supp. at 1369 (internal quotation marks and citations omitted).[1] In the case before us, although there is evidence in the record that the word "crystal" is used in other body deodorant products, there is no evidence in the record that the term "LE CRYSTAL NATUREL" conveys the character or quality of plaintiff's product to persons who have never seen the product and who do not know what it is. We believe that the average consumer who has never heard of plaintiff's product would have to use his or her imagination to determine that LE CRYSTAL NATUREL is a body deodorant. *See Stix Products, Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y.1968) (mark is suggestive, rather than descriptive, if it merely suggests the idea of some characteristic or quality to a potential buyer who has never seen the product and does not know what it is).

In sum, when we examine this record in the light most favorable to the plaintiff, we conclude that plaintiff's mark is suggestive.[2]

### B. Confusion

■ In order to obtain relief, FT must prove that Hargen's mark has caused an "appreciable number of ordinarily prudent purchasers to be misled, or ... simply confused as to the source of the goods in question." *Banff, Ltd. v. Federated Department Stores, Inc.,* 841 F.2d 486, 489 (2d Cir.1988). To determine whether there is likely to be confusion between marks, the Second Circuit uses what are known as the "Polaroid factors." These factors include the strength of the original user's mark, the degree of similarity between the marks, the proximity of the products, the likelihood that the plaintiff will bridge the gap, the buyers' sophistication, actual confusion, the junior user's intent, i.e., good faith or bad faith in adopting the mark, and the quality of the defendant's product. *See Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). However, none of these factors is by itself dispositive. *Banff, Ltd.,* 841 F.2d at 490.

### 1. Strength of Plaintiff's Mark

The first *Polaroid* factor, the strength of the trademark, refers to the mark's "tendency to identify the goods sold under the mark as emanating from a particular source." *McGregor–Doniger v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979). "Courts look to two factors to determine the relative strength of a mark: (1) the placement of the mark on the spectrum of marks; and (2) the marketplace recognition value of the mark. The first factor identifies the inherent potential of the mark at the time of its first use. The second describes its actual consumer recognition value at the time recognition is sought, or at the

1. We note that "the distinction between suggestive and descriptive terms is one that the courts have had great difficulty in drawing." *Karmikel,* 658 F.Supp. at 1370 (internal quotation marks and citations omitted).

2. The fact that the word "crystal" may describe a characteristic of FT's product does not make the mark descriptive. *See Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 699–700 (2d Cir.1961) (although the mark "Poly Pitcher" includes a characteristic of the product, i.e., that the product is a pitcher, the Court held the mark suggestive because the mark did not convey, to

someone who had never seen the product, the fact that it was a pitcher made of polyethylene); *Glamorene Products Corp. v. Boyle–Midway, Inc.,* 188 U.S.P.Q. 145, 1975 WL 21166 (S.D.N.Y. 1975) (Spray N' Vac found to be merely suggestive of aerosol rug cleaner).

Moreover, because we find FT's mark suggestive, Hargen's assertion that its use of FT's tradename is protected by the fair use defense is meritless. *See Venetianaire Corp. of America v. A & P Import Co.,* 429 F.2d 1079, 1082–83 (2d Cir.1970).

time it is asserted in litigation to prevent another's use." *Karmikel,* 658 F.Supp. at 1369 (citations and internal quotation marks omitted).

In order to determine the "placement of the mark on the spectrum of marks" courts look to the mark's classification. *See id.* at 1369–70; *see also Eli Lilly & Co. v. Revlon, Inc.,* 577 F.Supp. 477, 484 (S.D.N.Y.1983) (looking to the classification of the mark to determine the mark's strength). In the case before us, we have determined that FT's mark is suggestive. Therefore, we believe that FT's mark, at least as measured by the first factor of this two-factored test, is relatively strong. *See Gordon Electronics, Inc. v. Katone Corp.,* 1991 WL· 8485, at *3 (S.D.N.Y.1991) ("classification of a mark as arbitrary or suggestive, rather than descriptive or generic, supports a finding that the mark is strong.").

As far as the second factor of the test is concerned, there is no evidence in the record that indicates the extent to which customers recognize FT's mark. Though FT argues that LE CRYSTAL NATUREL has been widely advertised, advertising alone does not provide a basis for determining the extent of customer awareness of a mark. *See Exquisite Form Industries, Inc. v. Exquisite Fabrics of London,* 378 F.Supp. 403, 411 (S.D.N.Y.1974). Thus, material issues of fact remain regarding consumers' recognition of plaintiff's mark.

Finally, "plaintiff's ... mark [ ] obtains a presumption of strength by virtue of its registration." *See Gordon,* 1991 WL 8485, *4.

In sum, both the classification and the registration of plaintiff's mark support the notion that plaintiff's mark is strong. Thus, reading the record in the light most favorable to the plaintiff, we conclude that plaintiff's mark is relatively strong. *See id.* at *4.

### 2. Defendant's Good Faith in Adopting Its Mark

Dennis Harris, one of Hargen's principals, maintains that Hargen acted in good faith when it adopted its mark. Harris claims that in 1989 Hargen became familiar with the name Le Crystal for a body deodorant, but was not yet aware of the plaintiff's product.

Harris further contends that in 1990 Hargen displayed at a trade show a large, purple, plastic box as a prototype package for Hargen's deodorant product. As a result of feedback from the trade-show, Hargen decided that the packaging would not sell, and resolved not to use it. One month later, Hargen discovered that the packaging it used at the trade show resembled the packaging for "LE CRYSTAL NATUREL," and this provided Hargen with another reason not to use this packaging. Harris dep. at 63, 131–133.

Furthermore, out of a list of thirty possible names for its deodorant product, Hargen originally decided on the name Mother Nature's. Subsequently, Hargen shortened the name of its deodorant product to Nature's because too many other companies used Mother Nature's in their products' names. Harris dep. at 135–36.

FT has put forth no evidence to refute Hargen's claim of good faith in the creation of Hargen's mark and overall packaging. FT's sole "proof" of bad faith on the part of Hargen are the conclusory allegations that Rosenblatt, FT's president, made in his deposition. *See* Rosenblatt Dep. Vol. III at 78 ("it is incredible to believe that [Hargen] would not have known about our packaging ... before they created their own similar packaging."); *id.* ("[t]he defendant's product is too similar to ours to have happened by accident."). In addition, Rosenblatt admitted that FT has not investigated whether Hargen created its mark after becoming aware of FT's mark. *Id.* at 79–80. In sum, reading the evidence in the light most favorable to the plaintiff, we cannot find, on this record, that defendant acted in bad faith.

### 3. Buyer's Sophistication

Neither party has put forth any evidence about the sophistication of their products' potential purchasers. Thus, there remain questions of material fact as to this issue.

### 4. Proximity

The record indicates that plaintiff and defendant's products are both body deodorants that are sold in the same stream of commerce. This fact weighs in favor of a finding of confusion between the two products. *See*

*Karmikel Corp. v. May Department Stores Co.,* 658 F.Supp. 1361, 1373–74 (S.D.N.Y. 1987).

### 5. Bridging the Gap

This factor turns on the likelihood that FT will enter Hargen's market. *W.W.W. Pharmaceutical Co., v. The Gillette Co.,* 984 F.2d 567, 574 (2d Cir.1993). Since, as noted above, both body deodorants at issue in this case are sold in the same stream of commerce, there is no gap to bridge. Accordingly, this factor, as does proximity, weighs in favor of a finding of confusion between the two products.

### 6. Similarity

■ "Similarity between a senior and junior users' marks is a fundamental *Polaroid* factor...." *Frito–Lay Inc. v. The Bachman Co.,* 704 F.Supp. 432, 435 (S.D.N.Y.1989). Although likelihood of confusion may be slight when two products are examined side-by-side, the proper test is whether confusion is likely when a consumer, slightly familiar with plaintiff's product, is presented with defendant's product alone. *American Home Products Corp. v. Johnson Chemical Co.,* 589 F.2d 103, 107 (2d Cir.1978).[3]

At least two facts could lead a jury to determine that consumers might confuse FT's and Hargen's deodorant products. First, LE CRYSTAL NATUREL and NATURE'S Pure Crystal Deodorant have names that sound similar. Second, plaintiff's and defendant's marks look somewhat similar to one another when written.

However, there are other facts about the plaintiff's and the defendant's products which might lead a jury to determine that the products are not confusingly similar. For example, on plaintiff's packaging the words LE CRYSTAL NATUREL are all in the same size print, and are directly above a graphic design of the heads of a man and a woman. By contrast, on defendant's packaging, the word NATURE'S is written in capital letters and the words Pure Crystal Deodorant are much smaller and are a mixture of capital and lower case letters. Moreover, unlike plaintiff's packaging, Hargen's packaging contains no graphic design.

Plaintiff contends that a consumer survey it conducted proves conclusively that there is a likelihood of confusion between its product and defendant's product. Participants in the survey were first shown LE CRYSTAL NATUREL and subsequently were shown twelve other deodorant products. Eighty-three percent of the consumers tested thought that Nature's Crystal, a product almost identical to defendant's product, was the LE CRYSTAL NATUREL that they had seen earlier. Seven percent believed that FT manufactured Nature's Crystal. The researcher determined that Nature's Crystal was so similar to defendant's product, Nature's Pure Crystal Deodorant, that the test results would apply to Nature's Pure Crystal Deodorant by analogy. Thus, the expert concluded that strong evidence of confusion exits between plaintiff's and defendant's products. Aff. of Norman Passman at 2, ex. A. Defendant contends that plaintiff's survey is irrelevant because it did not involve defendant's product. We believe that the import of this survey is an issue that must be determined by a jury at trial.

### 7. Quality of the Defendant's Product

The parties have submitted no evidence on this issue. Thus, material issues of fact about the quality of the defendant's product remain.

Having considered all of the *Polaroid* factors, we conclude that there remain disputed issues of material fact that preclude us from granting Hargen's motion for summary judgment on FT's trademark claim. Accordingly, Hargen's motion for summary judgment on FT's trademark claim is denied.

### II. Trade Dress Infringement

■ FT alleges that Hargen's unregistered trade dress infringes on FT's unregis-

---

3. Plaintiff and defendant disagree as to what actually constitutes defendant's mark. Defendant claims that "Nature's" alone is its mark, Memo in Support of Summary Judgment at 8, while plaintiff claims that the entire phrase "Nature's Pure Crystal Deodorant" is Hargen's mark. Rosenblatt Affidavit. ¶ 14. Neither side has put forth any evidence to prove or disprove their claims as to the true mark of Hargen's product, and therefore, questions of fact exists as to what is defendant's mark.

tered trade dress, in violation of § 43(a) of the Lanham Act. Hargen contends that FT cannot obtain relief under the Lanham Act because FT's trade dress is functional.[4]

A trade dress is functional when the trade dress "is essential to the uses or purposes of the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982). A product's trade dress must be viewed in its totality. *Le Sportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 75 (2d Cir.1985). However, if a trade dress is found to be functional, its features may be copied even if confusion would result. *American Greetings Corp. v. Dan–Dee Imports, Inc.,* 807 F.2d 1136, 1141 (3d Cir.1986).

FT states that its packaging design was chosen because the design was pretty, sophisticated, and showed off the novelty value of the deodorant stone. Rosenblatt dep. at 520–522. FT also states that FT colored the package blue because it liked that color, not because blue was a common color used in cosmetic packaging. *Id.* at 378. Moreover, the evidence before us indicates FT and at least one other producer of deodorant stones pack their deodorant products in other packaging besides plastic boxes. For example, plaintiff also packs its deodorant stone in a soft plastic pouch, a triangular cardboard box, a shrink-wrapped soap dish and satin pouches of various colors. Rosenblatt aff. ¶¶ 5, 9, 13. Moreover, another company, whose name Rosenblatt could not recall at his deposition, distributes a similar product in a velvet, drawstring pouch. Rosenblatt dep. at 379–380. This evidence suggests that plaintiff's packaging in this case may not be functional.

Defendant claims that FT's packaging is functional because the packaging is allegedly efficient and compact, because the packaging allows consumers to see the product, and because the packaging is commonly used in the stick and roll-on deodorant industry.

Moreover, Hargen also claims that FT's plastic boxes are functional because they allow for easy shipping, allow for shelf display and stacking, protect the crystals from chipping, protect the crystals from dissolving in moist places, and are designed to hold the crystal deodorant in the same way that a soap dish holds soap. Memo in Support of Summary Judgment at 11–13. *See* Rosenblatt dep. at 95; vol. IV at 19. As is apparent, disputed issues of material fact remain about the functionality or non-functionality of the plaintiff's trade dress. Therefore, Hargen's motion for summary judgment on FT's trade dress claims is denied.

### III. Causes of Action Under New York Law

Because Hargen has undertaken no independent analysis of FT's New York causes of action, Hargen's motion for summary judgment on these causes of action is denied.

### Conclusion

Hargen's motion for summary judgment is denied.

SO ORDERED.

---

4. Defendant alternatively claims that even if the packaging is not functional, plaintiff cannot claim that the color blue is distinctive of its product and therefore protectable. Memo in Support of Summary Judgment at 16. Plaintiff,

however, is not claiming exclusive rights to the use of blue in its packaging. Memo in Opp. to Summary Judgment at 13. Rather, plaintiff claims a proprietary interest in the entirety of its packaging. *Id.* at 12.